[No. 330-2.    Division Two.    April 17, 1972.]

FULTON H. MCLEAN et al., Appellants, v. ST. REGIS
PAPER COMPANY et al., Respondents.

Michael S. Manza (of Sterbick, Manza, Moceri, Gustaf-
son & Narigi) and Edward J. Niland (of Boccardo, Blum,
Lull, Niland, Teerlink & Bell), for appellants.

F. Lee Campbell and Martin T. Crowder (of Karr, Tuttle,
Koch, Campbell, Mawer & Morrow), for respondents.

PEARSON, J.—This is an action for personal injuries and
damages in which the plaintiffs, Fulton and Dorothy Mc-
Lean, sought to establish the vicarious liability of defend-

ant, St. Regis Paper Company, for the negligent actions of defendant, Alan Roland. A jury rejected plaintiff's theories that Roland was either an employee or agent of St. Regis at the time the car he was driving rolled backward down a hill, crushing Mrs. McLean against the wall of a building. Plaintiff's principal contention is that an agency was established as a matter of law, creating vicarious liability by application of the doctrine of "respondeat superior." We affirm the judgment of dismissal.

At the time of the accident, on Monday, August 21, 1967, Roland was en route to Western Clinic in Tacoma to undergo a physical examination to determine his fitness for employment with St. Regis. Roland had interviewed a Mr. Harold Snow at the St. Regis personnel center on Friday, August 18, 1967. Snow advised Roland that there were job openings in the sawmill. Shift times, wages and benefits were discussed. Although Snow never said, "You're hired," Roland testified that he thought he had a job. By the time Roland had talked with another man and filled out some forms, it was too late to go to Western Clinic for a required physical examination. He was told to come back on Monday, pick up a form, proceed to Western Clinic, wait for the form to be completed, and then return it to St. Regis. The physical examination was paid for by St. Regis, and was an absolute prerequisite to employment.

Upon return from the physical examination, Roland understood that he was to take a dexterity test and thought he would then begin work on the Monday afternoon shift. On the morning of Monday, August 21, the receptionist at St. Regis told Roland where Western Clinic was located, but not how to get there. Roland began his drive to the clinic in a car he had borrowed from a friend, taking a longer route to avoid some steep hills. The accident occurred on his way to the clinic.

The trial itself was limited in nature. Roland did not appear, and both attorneys agreed he was negligent. The only real issues submitted to the jury were damages and the question of the vicarious liability of St. Regis. The jury

returned a verdict in favor of McLean, against Roland, in the sum of $377,000 but found also that St. Regis was not liable to plaintiffs.

Plaintiffs concede on appeal that the issue of whether or not Roland was an employee of St. Regis at the time of the accident was a question of fact for the jury. They contend, however, that whether or not Roland was an employee of St. Regis, he was an agent for the latter *as a matter of law* for the express purpose of obtaining an employment physical and returning to St. Regis with the results. If this were true, it is contended St. Regis would *necessarily* be liable for the damage amount under the doctrine of respondeat superior. These contentions raise the central issue of this appeal. What is the vicarious tort liability of a principal for the negligent physical acts of a nonservant agent?

Assuming that Roland was not employed by St. Regis at the time of the accident,[1] and assuming arguendo that he was an agent of St. Regis for the purpose of obtaining a pre-employment physical, we do not agree that vicarious liability would otherwise attach as a matter of law under agency principles. The general rule of vicarious tort liability applicable to nonservant agents is set forth in Restatement (Second) of Agency § 250 (1958), as follows:

> A principal is not liable for physical harm caused by the negligent physical conduct of a non-servant agent during the performance of the principal's business, if he neither intended nor authorized the result nor the manner of performance, *unless he was under a duty to have the act performed with due care.*[2]

(Italics ours.)

The comments following this and subsequent sections of the Restatement of Agency make it clear that vicarious liability of a principal for the negligent acts of any agent or servant is dependent upon whether the principal controls

---

[1] The jury found that Roland was not employed by St. Regis at the time of the accident.

[2] This italicized portion of the rule deals with certain nondelegable duties having no application here. *See* Restatement (Second) of Agency § 251 (1958).

or has the right to control *the details of the physical movements* of the agent while such person is conducting the authorized transaction. *See* Restatement (Second) of Agency § 250, comment *a* (1958).

In accord with this general principle are two eminent legal scholars, namely, Warren A. Seavey, and William L. Prosser.[3] In W. Prosser, Torts § 69, at 479 (3d ed. 1964) the rule is stated and rationalized as follows:

> Since an agent who is not a servant is not subject to any right of control by his employer over the details of his physical conduct, the responsibility ordinarily rests upon the agent alone, and the principal is not liable for the torts which he may commit.

(Footnote omitted.) If the rule were otherwise, then in many true agency situations unwarranted vicarious tort liability would attach; for example, the client would be responsible for the negligent physical conduct of his attorney; or the factor, the broker, the independent contractor salesman, or the architect—all who are agents in the broad, generic sense could impose liability on their respective clients for negligent physical acts wholly beyond the client's ability to control.

The Washington courts have not previously considered the vicarious tort liability of the principal of a nonservant agent. Both parties in their briefs have approached the question as though vicarious tort liability were dependent upon the *creation* of an agency relationship. Consequently, St. Regis urges, on the one hand, that agency requires proof of (1) mutual consent, and (2) control by the principal, and that in this instance the requirement of control was lacking. *See Moss v. Vadman,* 77 Wn.2d 396, 463 P.2d 159 (1969); *Matsumura v. Eilert,* 74 Wn.2d 362, 444 P.2d 806 (1968).

Plaintiff, on the other hand, urges that Washington recognizes gratuitous agents (*Coombs v. R. D. Bodle Co.,* 33 Wn.2d 280, 205 P.2d 888 (1949)) and that mutual consent

---

[3] W. Seavey, Law of Agency, ch. 6, § 91 at 161 (1964); W. Prosser, Torts § 69, at 479 (3d ed. 1964).

for the undertaking which would benefit both parties was factually established. This mutual manifestation of consent, it is contended, gives rise to the existence of agency as a matter of law. Restatement (Second) of Agency § 15 (1958).

For the most part, the sections of the Restatement and other authorities cited by both parties do not deal with tort liability, but address the question of the ability of one to bind another in contractual dealings with third parties. In our view, the question of vicarious tort liability involves different policy considerations than the question of an agent's ability to bind his principal in business dealings with third persons.

For instance, we have no hesitation in accepting the premise that St. Regis authorized Roland to do an act which was of mutual benefit to both. He was authorized to act for St. Regis in obtaining a physical examination at Western Clinic. In this sense, he was an agent within the broad definition of Restatement (Second) of Agency § 15, at 82 (1958), which provides:

An agency relation exists only if there has been a manifestation by the principal to the agent that the agent may act on his account, and consent by the agent so to act.

This agency concept expressed in section 15 may or may not be consistent with that described by the Supreme Court in *Moss v. Vadman, supra,* where it was stated at page 402:

We have frequently cited the Restatement of Agency [Restatement (Second) of Agency § 1 (1958)] for the proposition that an agency relationship results from the manifestation of consent by one person that another shall act on his behalf and subject to his control, with a correlative manifestation of consent by the other party to act on his behalf and subject to his control.

(Footnote omitted.)

Both section 1 and section 15 of the Restatement (Second) of Agency deal with contractual conceptions of agency and not with tort liability. "Subject to his control" referred to in *Moss* as an element for the creation of agency refers not to control of the physical conduct of agent, but

control of the business dealings to which the relationship refers. Consequently, these general statements are of little value in analyzing the question of vicarious tort liability.

The doctrine of respondeat superior, which is the basis of vicarious tort liability in this jurisdiction whether an agent or an employee is involved, requires that the one charged with imputed liability have control of or the right to control the physical actions of the negligent actor. In the early case of *Carter v. King County*, 120 Wash. 536, 208 P. 5 (1922) it was determined that a deputy sheriff on the payroll of King County could not create vicarious liability in the county, because he was by statute under the sole control of the sheriff who appointed him. At page 539, the Supreme Court stated:

> The fact that the driver was paid by King county does not constitute him a *servant* or *agent* of King county. That is a test the least conclusive. The test always is, to whom is the person in question subject as to the manner in which he shall do his work? The master is the one who can not only order the work, but also order how it shall be done.[4]

(Italics ours.)

We thus conclude that the label "employee," or "agent" does not per se create vicarious tort liability. Vicarious tort liability arises only where one engaging another to achieve a result controls or has the right to control the details of the latter's physical movements. *See* Restatement (Second) of Agency § 250 (1958).[5]

Conceding then, arguendo, that Roland was an "agent" for St. Regis for the limited purpose of obtaining a pre-employment physical examination, we are not persuaded that St. Regis, as a matter of law, controlled or had a right to control his physical movements while he was carrying out the authorized transaction.

---

[4]For a more recent discussion of the same principle, *see Fisher v. Seattle*, 62 Wn.2d 800, 804, 384 P.2d 852 (1963).

[5]We exclude from this rule the torts of fraud or deceit and also those torts which arise by virtue of a breach of a nondelegable duty. *See Abel v. Firs Bible & Missionary Conference*, 57 Wn.2d 853, 360 P.2d 356 (1961).

Roland was told only where Western Clinic was, not how to get there. He provided his own transportation and was in every sense on his own. He was under no obligation to actually take the physical examination, nor to return to St. Regis afterward. The trial court, by instruction 14, quite properly required the jury to find that St. Regis had "the right to exercise control over the conduct of" Roland in order to find vicarious tort liability. Such instruction and the others given pertaining to this issue[6] were wholly consonant with the rule announced above. We conclude that no error occurred in submitting to the jury the issue of vicarious liability based upon agency.

Plaintiffs make a strong argument that vicarious liability should be extended to cover the instant case because of policy considerations. They argue that St. Regis set in motion the chain of events leading to the tragic injuries to Mrs. McLean and indeed was to receive a benefit from the undertaking. They contend that St. Regis, rather than the innocent injured plaintiffs, should bear the loss as a part of its cost of doing business; and that St. Regis is better able to absorb the loss and distribute it through prices to the community at large.

This contention might possess arguable merit if we could limit consideration of the question of vicarious tort liability to the large, well-to-do commercial establishment with the strength and financial ability to absorb or pass along to the public the risks which such extension of the doctrine would generate. This type of liability, however, must attach uniformly to all, regardless of size and resources. The "deep pocket" referred to by some of the legal writers[7] as the rationale for the doctrine of vicarious tort liability, may indeed be a shallow pocket; and the serious effect of the extension of imputed liability to the individual

---

[6]Plaintiffs assigned error to instruction 16½ which allowed the jury to consider that the transaction was "gratuitous or short-lived" in determining whether an agency was created. Since those circumstances were germane to St. Regis' "right of control" over Roland, it was not error to give this instruction.

[7]W. Prosser, Law of Torts, § 68 (3d ed. 1964).

or the small business in the manner suggested is a significant policy consideration which cannot lightly be ignored.

The law, to this time at least, has limited the extent of vicarious tort liability to those who have some ability to control its consequences. No jurisdiction has taken the step plaintiffs ask us to take, and we are not persuaded that it would be wise to do so.

Plaintiffs' final assignment of error involves an evidentiary ruling which occurred during plaintiffs' case in chief. The witness, Harold Snow, who had first interviewed Roland for employment, was called as an adverse witness. St. Regis objected to his designation as an adverse witness on the principal ground that he had not been employed by St. Regis for 1½ years prior to the trial. After considerable discussion and a lengthy voir dire examination, the trial court refused to allow plaintiffs to examine Snow as an adverse witness. We do not find this ruling to be an abuse of discretion.

CR 43(b)[8] distinguishes two different categories of adverse witnesses: (1) hostile witness; (2) adverse party or an officer, director, or managing agent of a public or private corporation, partnership, or association that is an adverse party. See Gabel v. Koba, 1 Wn. App. 684, 463 P.2d 237 (1969). In the first category, the witness' hostility must, in some way, be demonstrated before he can be examined as an adverse witness. In the second category, the witness is presumed to be hostile in nature and may be called as an adverse witness as a matter of right.

Plaintiffs contend that Harold Snow was a managing agent of St. Regis. Furthermore, even though he had not been employed by them for 1½ years prior to trial, because he was a managing agent at the time of the employment interview plaintiffs should have been able to call him as an

---

[8]"A party may interrogate any unwilling or hostile witness by leading questions. A party may call an adverse party or an officer, director, or managing agent of a public or private corporation or of a partnership or association which is an adverse party, and interrogate him by leading questions and contradict and impeach him in all respects as if he had been called by the adverse party."

adverse witness under the second category of CR 43(b). The case of *Heasley v. Riblet Tramway Co.*, 68 Wn.2d 927, 416 P.2d 331 (1966) is cited for this contention.

■ While we do not decide whether or not Snow was formerly a managing agent for St. Regis, assuming for the sake of discussion that he was, we cannot conclude it was error to deny he was an adverse witness. If Snow had still been employed by St. Regis as a managing agent at the time of trial, CR 43(b) clearly states that he may be called as an adverse witness. However, as Snow was employed elsewhere at the time of trial, we do not feel he still could be called as an adverse witness as a matter of right under the second category. Such a rule would mean that any former managing agent (who was employed by the adverse party at the time of the incident at issue) could be called as an adverse witness, no matter what his present occupation is, whether he resigned or was fired.

We agree that it is a good rule that in some cases a former managing agent can be considered an adverse witness, but this should be based upon the court's discretionary determination of hostility, rather than as a matter of right. Perhaps the former managing agent is still closely tied in business relations with the adverse party, or only recently terminated employment with them. Perhaps his former job was directly related to the incident now at issue and he would wish to protect his reputation by defending his former employer's actions. Such factors as these, directly related to his former employment as a managing agent, could be considered in a determination of his hostility.

*Heasley v. Riblet Tramway Co., supra* stated only that it was not error to call a former employee (who was clearly a managing agent) as an adverse witness—not that the trial court was bound to do so. That case was decided before CR 43(b) was adopted, and relied on Annot., 56 A.L.R.2d 1108 (1957). Most of the cases in that annotation were from other jurisdictions where the evidentiary rule was based upon statute, rather than court rule. In Washington, the

trial court has a certain amount of discretion in determining who is an adverse witness. *See Valley Land Office, Inc. v. O'Grady,* 72 Wn.2d 247, 432 P.2d 850 (1967).[9]

Given the fact that Snow had not been employed by St. Regis for 1½ years prior to the trial and had no apparent stake in the outcome of the case as it would relate to his own business interests or reputation, we cannot say that the trial court abused its discretion in denying Snow as an adverse witness.

Judgment affirmed.

PETRIE, C.J., and ARMSTRONG, J., concur.

Petition for rehearing denied May 23, 1972.

Review denied by Supreme Court August 21, 1972.

---

[9]Overruled on other grounds: *Nordstrom v. White Metal Rolling & Stamping Corp.,* 75 Wn.2d 629, 453 P.2d 619 (1969).