[No. 52485-2-I.  Division One.  July 6, 2004.]

SHARON K. O'BRIEN, ET AL., *Appellants*, v. ROBERT E. HAFER, ET AL., *Respondents*.

*Wendy K. Anderson* (of *Law Office of William P. Harris*), for appellants.

*M. Colleen Barrett* (of *Barrett & Worden, P.S.*), for respondents.

Cox, C.J. — A master-servant relationship under agency principles may arise when one engages another to perform a task for the former's benefit.[1] In such a case, the one who seeks the benefit may either control or have the right to control the performance of the benefit.[2] " 'It is the existence of the right of control, not its exercise, that is decisive.' "[3] The question of agency is generally a question of fact to be decided by a jury.[4] Here, a jury could find that Robert Hafer, the driver of the car who struck and injured Sharon O'Brien and Christian Pointer (O'Brien), was the agent of Breanne Miller, the person Hafer was driving to pick up at Miller's request at the time of the accident. Accordingly, we reverse

---

[1] *Baxter v. Morningside, Inc.*, 10 Wn. App. 893, 896-97, 521 P.2d 946 (1974).

[2] *Baxter*, 10 Wn. App. at 895-96.

[3] *Pagarigan v. Phillips Petroleum Co.*, 16 Wn. App. 34, 37, 552 P.2d 1065 (1976) (quoting *Poutre v. Saunders*, 19 Wn.2d 561, 565, 143 P.2d 554 (1943)); *McLean v. St. Regis Paper Co.*, 6 Wn. App. 727, 732, 496 P.2d 571 ("Vicarious tort liability arises only where one engaging another to achieve a result controls or has the right to control the latter's physical movements.") (citing RESTATEMENT (SECOND) OF AGENCY § 250 (1958)), *review denied*, 81 Wn.2d 1003 (1972).

[4] *Uni-Com N.W., Ltd. v. Argus Publ'g Co.*, 47 Wn. App. 787, 796, 737 P.2d 304, *review denied*, 108 Wn.2d 1032 (1987).

the summary judgment order in favor of Miller in the published portion of this opinion. In the unpublished portion of this opinion, we conclude that the trial court did not abuse its discretion when it concluded that O'Brien failed to plead the theory of negligent entrustment.

In April 1999, Miller was living with friends, including her boyfriend Hafer, in Everett. On April 8, 1999, Miller went out with friends in downtown Seattle, leaving her Dodge Colt, purchased by her father for her use, at her apartment. When her friends decided to go to Tacoma at approximately midnight, Miller phoned her apartment looking for someone to pick her up because she had to go to work the next day. Hafer answered the phone and he agreed to pick up Miller in her car. Miller told Hafer where to find the keys and explained where she was so he could pick her up.

On his way to pick up Miller, Hafer, whose license was suspended at the time, ran a red light and struck the vehicle in which O'Brien and Pointer were riding.

O'Brien originally filed suit against Miller's father, Richard Miller, as the owner of the car, and Hafer, as the driver of the car. O'Brien later added Miller under the theory that Hafer was acting as Miller's agent at the time of the accident. On O'Brien's motion, Richard Miller and his wife were dismissed as defendants in February 2002, and in October 2002, the court entered a default judgment in favor of O'Brien and against Hafer.

Miller moved for summary judgment, arguing that O'Brien failed to state any basis for imposing liability because Hafer was not her agent and she did not own the Dodge Colt. In May 2003, the court granted Miller's motion. The court also denied O'Brien's motion for reconsideration in which O'Brien, for the first time, raised the theory of negligent entrustment.

O'Brien appeals.

## AGENCY

O'Brien contends that the trial court erred when it granted Miller's motion for summary judgment because Hafer was Miller's agent at the time of the accident. We hold that the question of agency presents a genuine issue of material fact in this case because a jury could find that Miller had a right to control Hafer's actions.

A trial court properly grants a motion for summary judgment when the pleadings, affidavits, depositions, and admissions on file demonstrate there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[5] The burden is on the party moving for summary judgment to demonstrate there is no genuine dispute as to any material fact, and reasonable inferences from the evidence must be resolved against the moving party.[6] The trial court should grant the motion only if, from all the evidence, a reasonable person could reach only one conclusion.[7] We review questions of law de novo.[8]

"[A]n agency relationship results from the manifestation of consent by one person that another shall act on his behalf and subject to his control, with a correlative manifestation of consent by the other party to act on his behalf and subject to his control."[9] Both the principal and agent must consent to the relationship.[10] The crucial factor is the right to control the manner of performance that must exist to prove agency.[11] "The negligence of the agent is imputed

---

[5] CR 56(c).

[6] *Folsom v. Burger King*, 135 Wn.2d 658, 663, 958 P.2d 301 (1998).

[7] *Folsom*, 135 Wn.2d at 663.

[8] *Mains Farm Homeowners Ass'n v. Worthington*, 121 Wn.2d 810, 813, 854 P.2d 1072 (1993).

[9] *Moss v. Vadman*, 77 Wn.2d 396, 402-03, 463 P.2d 159 (1969) (citations omitted).

[10] *Hewson Constr., Inc. v. Reintree Corp.*, 101 Wn.2d 819, 823, 685 P.2d 1062 (1984).

[11] *Bloedel Timberlands Dev., Inc. v. Timber Indus., Inc.*, 28 Wn. App. 669, 674, 626 P.2d 30, *review denied*, 95 Wn.2d 1027 (1981).

to the principal because he has the right to control the acts of the agent. It is the existence of the right of control, not its exercise, that is decisive."[12]

> One driving a motor vehicle at the request and for the purposes of the owner is usually treated as the servant or agent of the owner so as to impose on the latter liability for negligence in the operation of the vehicle. However, it has been held that where the owner does not retain the right to control the operation of the vehicle, the driver is not his servant within the rule of respondeat superior.[13]

█ "The existence of a principal-agent relationship is a question of fact unless the facts are undisputed."[14] The question of control or right of control is also one of fact for the jury.[15] But if the facts are undisputed and, without weighing the credibility of witnesses, there can be but one reasonable conclusion drawn from the facts, the nature of the relationship between the parties becomes a question of law.[16] The burden of establishing the agency relationship rests upon the party asserting its existence.[17]

Although there is no Washington case directly on point, the analysis set forth in *Baxter* guides our analysis.

In *Baxter*, a former employee, Hoffer, who was at the time of the incident an unpaid volunteer for a charitable organization, was in the process of picking up donated timber for the organization when he was involved in an automobile accident.[18] The court concluded, "that when Morningside engaged Hoffer to transport the donated items to their warehouse, Morningside controlled and had the right to

---

[12] *Pagarigan*, 16 Wn. App. at 37 (citation omitted).

[13] 6 FREDERICK D. LEWIS, BLASHFIELD AUTOMOBILE LAW AND PRACTICE § 252.12 (3d ed. 1966) (footnotes omitted).

[14] *Uni-Com N.W.*, 47 Wn. App. at 796.

[15] *Baxter*, 10 Wn. App. at 898.

[16] *Baxter*, 10 Wn. App. at 898.

[17] *Hewson*, 101 Wn.2d at 823.

[18] *Baxter v. Morningside, Inc.*, 10 Wn. App. 893, 894, 521 P.2d 946 (1974).

control Hoffer's physical conduct in the performance of the service. A master-servant relationship therefore existed."[19]

The *Baxter* court found particularly significant the fact "that the result of this telephone call and solicitation was a mutual agreement between Hoffer and Morningside controlling the time, destination, purpose and especially the means of Hoffer's undertaking."[20] The time was as soon as possible because the donated timber could not remain exposed to the elements.[21] The parties agreed to the destination and purpose of the trip—to pick up donated timber and transport it to Morningside's warehouse.[22] And the parties agreed that Hoffer would use his own vehicle and trailer as the means to transport the timber.[23] The court further noted that because of the nature of the service, no additional control, such as direct supervision, was necessary, and would have been impractical given the circumstances.[24] The court also observed that monetary compensation was not necessary to create a master-servant relationship.[25] The court concluded that there was no genuine issue of material fact that Hoffer was Morningside's agent and that the trial court erred when it denied the plaintiff's motion for summary judgment.[26]

Under the reasoning articulated in *Baxter*, there is a genuine issue of material fact whether Hafer was acting as Miller's agent at the time of the accident. Miller's declaration states that Hafer offered to pick her up when she called. Hafer's declaration states that Miller "instructed him" to pick her up. Miller directed Hafer to the place in her living quarters where he could find the keys to the Dodge

---

[19] *Baxter*, 10 Wn. App. at 897.

[20] *Baxter*, 10 Wn. App. at 898.

[21] *Baxter*, 10 Wn. App. at 898.

[22] *Baxter*, 10 Wn. App. at 898.

[23] *Baxter*, 10 Wn. App. at 898.

[24] *Baxter*, 10 Wn. App. at 898.

[25] *Baxter*, 10 Wn. App. at 896.

[26] *Baxter*, 10 Wn. App. at 899.

Colt she used for transportation. She also told him where to pick her up. The purpose of the trip was unquestionably for her benefit—to take her home in the middle of the night. Presumably, Miller also told Hafer to pick her up immediately. The scope of Hafer's use of the car that evening was limited to this one errand for Miller's benefit. Hafer did not go anywhere else on his way to pick up Miller. And, as we know from *Baxter*, no compensation arrangement is required for an agency to exist. In short, on this record, the question of agency is for a jury to resolve.

*Frankle v. Twedt*,[27] cited by the *Baxter* court, is particularly instructive. In *Frankle*, the car owner's foster brother was driving the owner's car to pick him up from his place of employment when the foster brother was involved in an accident with the defendant.[28] The foster brother used the owner's car for his own purposes earlier in the evening with the owner's permission, but that use was conditioned on the foster brother picking up the owner from work and taking him home.[29] The owner argued, and the trial court agreed, that this evidence supported only the conclusion that the foster brother was his bailee, not his agent.[30]

The Supreme Court of Minnesota disagreed. It concluded that the evidence could sustain a finding that the driver was acting as the car owner's agent, and that the issue of their relationship should have been submitted to the jury.[31] The court reiterated the rule that the right to control was essential and noted that factors to consider when determining whether a right to control exists include:

(1) that the automobile was owned by plaintiff, (2) that by the very nature of motor vehicle driving it would have been impractical to exercise any direct supervision on the car's operation, and (3) that it is the custom to permit a chauffeur,

---

[27] 234 Minn. 42, 47 N.W.2d 482 (1951).

[28] *Frankle*, 234 Minn. at 43-44.

[29] *Frankle*, 234 Minn. at 44.

[30] *Frankle*, 234 Minn. at 45.

[31] *Frankle*, 234 Minn. at 51.

whenever convenience so dictates, to proceed unaccompanied by the owner.[32]

The court also noted, "the existence of a mutual agreement controlling . . . the time, destination, and purpose of the trip is a significant factor."[33]

*Frankle* is persuasive that the question of Hafer and Miller's agency relationship, if any, was for the jury, not the judge, to decide.

In addition, other jurisdictions generally support the conclusion that the question presented here is one for the jury.[34]

Miller's reliance on *McLean* is misplaced. In *McLean*, the court addressed the question of the vicarious tort liability of a potential employer for a potential employee who injured a third party while on his way in his own car to a required preemployment physical. But in *McLean*, the court did not analyze whether an agency relationship existed.[35] It simply assumed that it did and then addressed whether the negligence of a nonservant agent would create vicarious

---

[32] *Frankle*, 234 Minn. at 49.

[33] *Frankle*, 234 Minn. at 49.

[34] *Towry v. Moore*, 281 Ala. 644, 647, 206 So. 2d 889, 891 (1968) (holding that trial court did not err in instructing the jury that "if you are reasonably satisfied from the evidence that Eva Lou Mason Towry was the owner or the bailee of the car being driven by Joe David Towry, and that the trip being made by Joe David Towry was for her benefit or for her benefit and the benefit of Joe David Towry mutually, then the jury is authorized to find from such evidence that Joe David Towry was the agent of Eva Lou Mason Towry" and that it was a question for the jury whether an agency relationship existed); *Hansen v. Oakley*, 76 Ariz. 307, 263 P.2d 807, 811 (1953) (holding that the evidence was sufficient to support the jury verdict finding the owner of a truck liable for his brother's negligence when the owner's brother drove the truck for his personal errand and to assist the owner in an errand for the owner's benefit); *Prickett v. Whapples*, 10 Cal. App. 2d 701, 52 P.2d 972 (1935) (where the member of car owner's household who was not a family member used the owner's car to regularly pick him up at the bus stop after work, the court concluded that the finding of an agency relationship was supported by the evidence because of the continuous practice and the fact that the household member drove the owner's car for the owner's benefit).

[35] *McLean v. St. Regis Paper Co.*, 6 Wn. App. 727, 729, 496 P.2d 571 (1972).

tort liability for the potential employer.[36] For that reason, *McLean* is not useful in helping this court to resolve the issue before us—whether there is a genuine issue of material fact as to agency.

Miller's reliance on *Blackburn v. Evergreen Chrysler Plymouth*[37] is similarly misplaced. In *Blackburn*, the court determined that a car dealership was not vicariously liable for the negligence of a prospective purchaser during a test drive.[38] The court articulated the rule "that the owner of a car is not liable for a prospective purchaser's negligence, because the purchaser usually is regarded as a bailee, and not as an agent of the owner."[39] But in articulating this rule, the court further noted that the reasoning behind the rule is:

> [i]n testing a car the prospective purchaser is not acting for the benefit, or in behalf of the seller, but is acting in behalf of himself. His own interests and those of the seller are antagonistic. That fact prevents the existence of the relation of principal and agent. . . . One essential element of agency, namely, one person acting for and in behalf of another, is wholly lacking.[40]

Thus, Miller's attempts to analogize *Blackburn* to the present case are not persuasive. Here, Hafer was acting for the benefit of Miller by picking her up in the middle of the night. He was not acting in his own interest or in a manner antagonistic to Miller's interests. *Blackburn* does not assist

---

[36] *McLean*, 6 Wn. App. at 729. "A servant is a person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control." RESTATEMENT (SECOND) OF AGENCY § 220(1), at 485 (1958). This is to be distinguished from a nonservant agent who "aids in the business enterprise but is not a part of it . . . . The nonservant agent agrees sometimes to render services and sometimes to achieve results, but he does not surrender control over his physical actions." RESTATEMENT (SECOND) OF AGENCY § 218, TITLE B. TORTS OF SERVANTS, Introductory Note at 479 (1958).

[37] 53 Wn. App. 146, 765 P.2d 922, *review denied*, 112 Wn.2d 1015 (1989).

[38] *Blackburn*, 53 Wn. App. at 148.

[39] *Blackburn*, 53 Wn. App. at 148.

[40] *Blackburn*, 53 Wn. App. at 149 (citing *Bertrand v. Mut. Motor Co.*, 38 S.W.2d 417, 418 (Tex. App. 1931)).

Miller with her assertion that when the owner is not in the car, no agency relationship exists.

Miller also relies on *Murray v. Corson Corp.*[41] for the proposition that when a person allows another to use their car, but is not present in the car, no agency relationship is created. But *Murray* does not support this proposition.

In *Murray*, the owner of a car accepted an offer from a service station manager to drive her car to discover why the car was not running properly.[42] The manager had been trying to sell the owner some appliances and saw an opportunity to pursue the sale in the car.[43] After driving for some time, the owner, who was then the passenger in the car, instructed the manager to return to the station so that she could get to an appointment.[44] It was at this point that the manager ran a stop sign and collided with another vehicle.[45] The owner of the vehicle sued and received a judgment against both the manager and his company. The company appealed, arguing that the manager was acting outside his relationship with the company and that the manager was, at the time of the accident, actually the car owner's agent under the "borrowed servant" theory.[46] Our Supreme Court noted:

> While it is true that the respondent, as owner of the vehicle, had the right to tell [the manager] to turn around and go back, or not to operate the vehicle in a negligent manner, she had no control over him in the manner in which he drove the car and tested the engine, and, in fact, had no knowledge of how it should be tested. . . . The evidence clearly showed that [the manager], with permission of the respondent, had control of the automobile at the time of the accident, and that his purpose in

---

[41] 55 Wn.2d 733, 350 P.2d 468 (1960).

[42] *Murray*, 55 Wn.2d at 735.

[43] *Murray*, 55 Wn.2d at 735.

[44] *Murray*, 55 Wn.2d at 735.

[45] *Murray*, 55 Wn.2d at 735-36.

[46] *Murray*, 55 Wn.2d at 736-37.

driving it was to attempt to make a sale and to discover the source of engine trouble with a view to correcting it.[47]

The court held that the trial court did not err when it refused to instruct the jury that the manager, at the time of the accident, was the borrowed servant of the car owner.[48]

*Murray* is similar to *Blackburn* in that the manager was driving the car for his own benefit—to make a sale—and not for the benefit of the owner. Thus, an essential element of the agency relationship was missing. For this reason, *Murray* does not control the result here.

For these reasons, we conclude that the trial court erred by granting summary judgment in Miller's favor.

We reverse and remand for further proceedings consistent with this opinion.

The remainder of this opinion has no precedential value. Accordingly, pursuant to RCW 2.06.040, it shall not be published.

COLEMAN and KENNEDY, JJ., concur.

Review denied at 153 Wn.2d 1022 (2005).