# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| HEIDI MORGAN, an unmarried individual, | ) | No. 75021-6-I |
| | ) | |
| Appellant, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| MICHAEL B. HEBERT and JANE DOE HEBERT, husband and wife and the marital community thereof; WILLIAM HEBERT and MARIA HEBERT, husband and wife and the marital community composed thereof, | ) | |
| | ) | |
| Respondents. | ) | FILED: February 21, 2017 |
| | ) | |

APPELWICK, J. — Michael took his parents' vehicle without permission. They demanded that he return it. Morgan argues that Michael was his parents' agent when he negligently collided with her vehicle while he was returning the car as directed. The trial court dismissed Morgan's claims against the parents on summary judgment. We affirm.

## FACTS

This case arises out of a motor vehicle accident involving Michael Hebert and Heidi Morgan. Michael's parents, William and Maria Hebert, owned the

vehicle that Michael was driving. [1]  Michael was an adult at the time of the accident.  He did not live with his parents.  Michael described his relationship with his parents as "not the best."  But, Michael would occasionally visit his parents' house and was permitted to stay the night.  Michael's parents had made very clear to him that he could not use their 1994 Infinity J304D vehicle.  Michael also had a suspended driver's license.  But, on May 23 or 24, 2014, while his parents were gone, Michael took the Infinity.

When they discovered that the vehicle was missing, the parents did not immediately report the car stolen.  They suspected that Michael had taken it.  William immediately called Michael.  He demanded that Michael return the vehicle.  Maria specifically remembered William telling Michael to "[g]et the car home."  Over the next few days, the parents called Michael and sent him multiple text messages asking him to return the vehicle.  They threatened to notify the police.  They searched their local neighborhood for the vehicle, and they checked locations that they knew Michael frequented.  Finally, on Monday, May 26, 2014, while driving the car back to his parents' house, Michael negligently collided with Morgan.

Morgan filed a complaint for negligence that named Michael and his parents as defendants.  The parents sought summary judgment regarding their liability, which the trial court granted.  After the claims against the parents were

---

[1] This case involves three parties: (1) Morgan, (2) Michael Hebert, and (3) Michael's parents, William and Maria Hebert.  For the purposes of clarity, we refer to Michael Hebert as "Michael," and William and Maria Hebert either by their first names, or collectively as "the parents."  We intend no disrespect.

dismissed, an arbitrator awarded Morgan $42,444 in damages from Michael. Morgan appeals the order granting summary dismissal of the claims against William and Maria.

## DISCUSSION

Morgan argues that summary judgment was improper because Michael was acting as his parents' agent. She asserts this is so, because Michael was following their orders to return their vehicle, which he originally took without permission.

Appellate courts review summary judgment orders de novo. Owen v. Burlington N. & Santa Fe R.R., 153 Wn.2d 780, 787, 108 P.3d 1220 (2005). Summary judgment is warranted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Van Noy v. State Farm Mut. Auto Ins. Co., 142 Wn.2d 784, 790, 16 P.3d 574 (2001). All facts and reasonable inferences must be considered in the light most favorable to the nonmoving party. Clark v. Baines, 150 Wn.2d 905, 910-11, 84 P.3d 245 (2004).

The existence of a principal-agent relationship is a question of fact unless the facts are undisputed. O'Brien v. Hafer, 122 Wn. App. 279, 284, 93 P.3d 930 (2004). The question of control or right of control is also one of fact for the jury. Id. But, if the facts are undisputed and, without weighing the credibility of witnesses, there can be but one reasonable conclusion drawn from the facts, the nature of the relationship between the parties becomes a question of law. Id.

Vicarious liability of a principal for the negligent acts of an agent is dependent upon whether the principal controls or had the right to control the details of the physical movements of the agent. McLean v. St. Regis Paper Co., 6 Wn. App. 727, 729-30, 496 P.2d 571 (1972). Both the principal and agent must consent to the relationship. O'Brien, 122 Wn. App. at 283. It is the right of control, not its exercise, that is decisive. Id. at 284.

Morgan relies primarily on two Washington cases: Baxter v. Morningside, Inc., 10 Wn. App. 893, 899, 521 P.2d 946 (1974), and O'Brien, 122 Wn. App. 279. In Baxter, Hoffer negligently collided with Baxter while Hoffer was volunteering for Morningside, a charity. 10 Wn. App. at 895. Hoffer had previously been a Morningside employee, but he had recently transitioned to a volunteer. Id. at 894-95. The trial court granted Morningside's motion for summary judgment, finding no vicarious liability. Id. at 894. The Court of Appeals reversed. Id. at 899. It held that, even though Hoffer was a volunteer, an agency relationship existed because he was performing work as requested by a Morningside representative. Id. at 895, 897-98. The court found "it particularly significant that . . . [there] was a mutual agreement between Hoffer and Morningside controlling the time, destination, purpose[,] and especially the means of Hoffer's undertaking." Id. at 898.

In O'Brien , Miller asked her roommate-boyfriend, whose license was suspended, to pick her up from a bar. 122 Wn. App. at 282. Miller told him where to find her keys in their dwelling and where to pick her up. Id. Her

4

boyfriend struck the plaintiff's vehicle on the way to pick Miller up. Id. Relying on Baxter, the court found that there existed a genuine issue of material fact on whether the boyfriend was acting as Miller's agent. Id. at 285-86. Echoing Baxter, the O'Brien court stated that " 'a mutual agreement controlling . . . the time, destination, and purpose of the trip is a significant factor' " in determining whether the principal actually had the right to control the agent. Id. at 287 (quoting Frankle v. Twedt, 234 Minn. 42, 49, 47 N.W.2d 482 (1951)).

Morgan argues here that, like in O'Brien, the alleged principal controlled (1) the time—in both cases, immediately; (2) the destination—in O'Brien the pickup place and here the parents' home; (3) the purpose—in O'Brien to pick the owner up and in this case to bring the parents' car home; and (4) the means—in both cases, driving.[2]

But, an agency relationship arises only when the principal agrees to the agent's conduct. See O'Brien, 122 Wn. App. at 285. And, unlike Baxter and O'Brien, the parents did not ask Michael to take possession of the car or to work on their behalf. Rather, the parents had made it clear to Michael that he was never to use their vehicle. Yet, he took the car without their knowledge or consent. And, Michael continued to possess the car, even after his parents demanded that he return it immediately. His defiance demonstrates the parents' complete lack of control.

---

[2] In her complaint, Morgan argued that the parents were alternatively liable under the family car doctrine. But, in her response to the parents' motion for summary judgment, she expressly abandoned her family car doctrine arguments. The family car doctrine is therefore not at issue here.

The law does not hold the vehicle owner liable for the negligent acts of an individual that has taken the vehicle unlawfully. See Kim v. Budget Rent A Car Sys., Inc., 143 Wn.2d 190, 202, 15 P.3d 1283 (2001) ("[W]e have held that the owner of an unsecured vehicle that is stolen and later involved in an accident is not liable for a third party's damages caused by the accident."). Michael had no more permission to possess the vehicle than the thief in the Kim case. None of Morgan's cited authority supports the principle that a person whose property is wrongfully taken can be held liable for the negligence of the person who wrongfully took the property.

Nevertheless, Morgan portrays the parents' demands that Michael return the vehicle as establishing an agency agreement with Michael.[3] According to Morgan, once the parents requested that Michael return the car, his possession and use became permissive, for his parents' benefit (the vehicle's return), and under their control. If not establishing control, Morgan argues that, at a minimum, a question of fact has been raised which precludes summary judgment.

We hold that, as a matter of law, the bare demand that wrongfully taken property be returned, even when complied with, is insufficient to create a question of fact regarding the owner's right of control over the possessor, as is

_____

[3] The parents argue that the "[g]et the car home" statement is not admissible because, under the Restatement (Second) of Torts § 111 (1965), it is privileged as a statement for the purposes of recaption. But, regardless of the statement's admissibility, we hold that the parents cannot be held liable under these facts. We therefore decline to address their privilege of recaption argument and whether Washington law recognizes such a privilege.

6

necessary to establish agency. The trial court did not err in granting the parents' motion for summary judgment.[4]

We affirm.

WE CONCUR:

---

[4] Morgan moved for summary judgment in her response to the parents' motion for summary judgment. The parents therefore argue that Morgan's motion was not properly before the trial court. But, because summary judgment in favor of the parents was proper, we decline to address issues pertaining to Morgan's countermotion for summary judgment.