**FILED**
**MAY 3, 2018**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Estate of | ) | No.  35054-1-III |
| | ) | |
| DAN MCANALLY, | ) | |
| | ) | UNPUBLISHED OPINION |
| Deceased. | ) | |
| | ) | |

LAWRENCE-BERREY, C.J. — Will and trust beneficiary Darrell Riste appeals after

a court commissioner denied his petition that sought various forms of relief.  At issue here

is whether the court commissioner erred when it denied his petition to remove Baker

Boyer Bank as personal representative of the Estate of Dan McAnally.  We determine that

the court commissioner's findings of fact are supported by substantial evidence and that

its legal conclusions are correct.  We therefore affirm the court commissioner.

FACTS

Mr. McAnally died testate on September 22, 2012.  His estate consisted of a

personal residence, tangible personal property, bank accounts, and—the major subject of

this appeal—commercial property in Selah, Washington, known as the Viking Village

Shopping Center.

On September 25, 2012, Baker Boyer Bank successfully petitioned Yakima County Superior Court to admit the will to probate and confirm the bank as personal representative (PR) with nonintervention powers. Baker Boyer Bank provided notice as required by law. No party contested the terms or validity of the will.

Mr. McAnally's will contained certain specific bequests in favor of Darrell Riste and Fred Wickholm. The will also directed the PR to pay from the residue of the estate all costs and taxes payable because of Mr. McAnally's death. The will directed that the remaining residue go to a testamentary trust, referred to as the Riste Trust, for the initial benefit of Mr. Riste.

As for the specific bequests, the will bequeathed Mr. McAnally's residence, all of his tangible personal property, and 30 percent of his bank accounts and deposits to Mr. Riste. The will bequeathed another 30 percent of his bank accounts and deposits to Mr. Wickholm. The PR fulfilled all of these specific bequests.

The will appointed Baker Boyer Bank as trustee of the Riste Trust. A testamentary trust provision directed the trustee to pay net income of the trust to Mr. Riste in installments, preferably monthly but at least quarterly. Another provision directed the trustee to invest assets of the trust in a manner that would provide maximum income rather than investing in growth. Several of Mr. Riste's family members were

beneficiaries of the trust upon Mr. Riste's death, concluding with the final trust balance being distributed to the University of Denver.

*Various communications*

On February 7, 2014, Mr. Riste requested from Baker Boyer Bank, in its capacity as PR, a copy of the inventory and appraisement of the estate and an annual report. Mr. Riste also requested from Baker Boyer Bank, as trustee of the Riste Trust, an itemization of all trust property and an itemization of all receipts and disbursements. Mr. Riste also requested several other documents related to assets and tax liability. The communications show that the lack of information and delay was frustrating Mr. Riste.

Although not at issue in this appeal, a question arose concerning the amount of the pecuniary bequests to Mr. Wickholm and Mr. Riste, and counsel for each filed a notice of appearance. In April and May 2014, both acknowledged their receipt of their full distributive shares of the estate. Mr. Wickholm's counsel withdrew, but Mr. Riste's counsel did not.

The estate made an estate tax payment of $48,787.00, but later received a refund of $46,171.23, which included interest.

3

*Viking Village appraisal and sale*

An appraiser valued Viking Village at $1,700,000 at the time of Mr. McAnally's death. The PR sought to sell Viking Village and received an offer of $1,451,000, subject to an environmental assessment. Mr. Riste, with knowledge of the offer, demanded that the PR not sell Viking Village. The PR listed several concerns it had of the risks associated with keeping Viking Village as a trust asset. Despite having full nonintervention powers, and despite Mr. Riste having already acknowledged receipt of his full distributive share of the estate, on June 5, 2014, the PR petitioned the court to approve the conditional sale for $1,451,000. The PR noted that the relationship between itself and Mr. Riste had become "sufficiently contentious," that Mr. Riste had resisted signing his full distributive share receipt, that RCW 11.100.140(8) authorized the sale without intervention, but that caution dictated having the court approve the sale. Clerk's Papers (CP) at 226-27.

The court held a hearing on July 8, 2014, and, while counsel for Mr. Riste attended, he did not object to the sale. On that same date in 2014, the court authorized the sale of the Viking Village property.

Fulcrum Environmental Consulting performed the environmental assessment. The assessment disclosed that the property had severe soil contamination. The potential buyer

withdrew from the conditional purchase. A new appraisal was performed, and the

property's value was estimated to be $1,100,000 as of January 15, 2014. A new buyer

made an offer of $1,100,000 for Viking Village. The PR informed Mr. Riste of the new

offer. The PR also informed Mr. Riste that although it did not need to go back to court

and obtain his consent to the sale, the buyer wished to have Mr. Riste's approval. On

March 20, 2015, Mr. Riste authorized the PR to sell the property at $1,100,000.

*Two years later*

For two years after the July 8, 2014 order authorizing the conditional sale, no party

filed any pleadings in the matter. On September 6, 2016, a new attorney appeared as

counsel of record for Mr. Riste. Shortly after, Mr. Riste filed a petition concerning

several matters: a request to recuse the judge who had approved the conditional sale of

Viking Village, a request to remove Baker Boyer Bank as PR for conflicts of interest and

breaches of fiduciary duties, a request for an order requiring the PR to file an accounting,

a request for denial of fiduciary and attorney fees, and a request for an order freezing the

assets of the estate. The filing alleged multiple problems including dishonesty, the use of

estate funds to pay taxes and costs of administration, lack of communication about estate

assets, and the sale of the Viking Village property.

Mr. Riste filed an affidavit in support of his petition, as well as e-mails detailing the above-mentioned lack of communication. The affidavit makes several allegations, including but not limited to: the estate had not paid him his full distributive share, the trust had not been making quarterly payments, tax fraud in payment of estate taxes, false filings from Baker Boyer Bank, and the estate had erroneously paid a creditor's claim of $14,000 to Mr. Wickholm. Mr. Riste also threatened to file a separate civil action under a lengthy list of theories against various entities and individuals.

Two days later, on September 8, 2016, the PR filed a notice and declaration of completion of probate. Mr. Riste filed an objection to the PR's requested fees and completion of probate. On November 10, 2016, the PR filed a response arguing two reasons why Mr. Riste did not have standing to bring his petition. The PR argued that Mr. Riste, years earlier, had acknowledged receipt of his full distributive share of the estate. The PR also argued that the trust was not a party to the probate matter.

In addition, the PR responded to what it considered to be erroneous factual statements by Mr. Riste. For instance, the PR provided an accounting that showed that the estate had not made a payment of $14,000 to Mr. Wickholm.

*Hearing and ruling*

On November 18, 2016, a Yakima County court commissioner considered the various issues. The parties made their arguments, and the commissioner asked questions. As the hearing progressed, the commissioner's questions portended a ruling against Mr. Riste. Mr. Riste then asked the commissioner to not make any ruling, so that he could perform discovery in an action he recently filed against the PR and various individuals. Despite Mr. Riste's request, the commissioner announced its decision.

The commissioner declined to rule on the standing issue, preferring instead to reach the merits of Mr. Riste's multiple arguments. The commissioner rejected Mr. Riste's arguments and petition in an oral ruling. It also approved the final accounting and granted the PR's request to close the estate. Mr. Riste then requested written findings and conclusions.

The PR prepared and submitted proposed findings and conclusions. Mr. Riste filed his objections to the findings and conclusions, and the PR responded in writing to those objections.

The commissioner signed the PR's proposed findings and conclusions, made some interlineations, and attached a six-page letter that supplemented the prepared findings and conclusions. This appeal timely followed.

No. 35054-1-III
*Estate of McAnally*

ANALYSIS[1]

Unchallenged findings of fact are verities on appeal. *State v. Hill*, 123 Wn.2d 641, 644, 870 P.2d 313 (1994). This court reviews challenged findings of fact for support by substantial evidence. *Miller v. City of Tacoma*, 138 Wn.2d 318, 323, 979 P.2d 429 (1999). Substantial evidence is evidence that is sufficient to persuade a rational, fair-minded person of the truth of the finding. *Id.* An appellate court reviews conclusions of law and questions of statutory interpretation de novo. *In re Estate of Jones*, 152 Wn.2d 1, 8-9, 93 P.3d 147 (2004). Whether a party breaches a fiduciary duty is a question of fact. *O'Brien v. Hafer*, 122 Wn. App. 279, 284, 93 P.3d 930 (2004).

A.    TRUST AND TRUSTEE ISSUES NOT PROPERLY BEFORE COURT

Mr. Riste makes several arguments about how the PR breached its fiduciary duties as a trustee and treats the PR and trustee as identical parties. The PR responds that this is an appeal from the closing of an estate and that the trust was never a party to the probate proceeding. And for these reasons, any issues raised about the trust or its actions as trustee are not properly before us. Mr. Riste does not respond to this argument. Mr. Riste

---

[1] RCW 2.24.050 provides that a court commissioner's orders and judgments are subject to review by the superior court within 10 days of the order or judgment being entered; but if no party timely demands review, the order or judgment becomes that of the superior court. In that event, appellate review may be sought in the same fashion as similar orders and judgments.

8

has also acknowledged a separate civil action he has filed against the trustee. We agree

with the PR. Mr. Riste's arguments about the trust and its actions as trustee are not

properly before this court.

B.    WAIVED ARGUMENTS

A party waives an assignment of error not adequately argued in its brief. *State v.*

*Motherwell*, 114 Wn.2d 353, 358 n.3, 788 P.2d 1066 (1990); RAP 10.3. RAP 10.3(a)(6)

requires parties to provide "argument in support of the issues presented for review,

together with citations to legal authority and references to relevant parts of the record."

*See Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

The purpose of the rule and related rules "is to enable the court and opposing counsel

efficiently and expeditiously to review the accuracy of the factual statements made in the

briefs and efficiently and expeditiously to review the relevant legal authority." *Hurlbert*

*v. Gordon*, 64 Wn. App. 386, 400, 824 P.2d 1238 (1992). This court is not obligated to

search the record for evidence supporting a party's claim of error. *Heilman v. Wentworth*,

18 Wn. App. 751, 754, 571 P.2d 963 (1977).

Mr. Riste violates the rules of appellate procedure in multiple ways. First, his brief

does not contain a statement of facts. RAP 10.3(a)(5) requires such a statement. To the

extent he includes assertions of facts in his various arguments, he either does not cite the

record to support his assertion, or he cites an *allegation* in his petition to support his assertion, or he cites to a span of dozens or even hundreds of pages. Further, Mr. Riste's brief often summarily states his view of the law without any analysis, followed by string citations to statutes and cases.

We will nevertheless address Mr. Riste's more coherent arguments, even some of which are not accompanied by proper citations to the record or legal argument. To the extent we do not address his arguments, which he sets forth in more than 40 separate headings, it is because we deem them waived by his failure to follow our rules of appellate procedure.

C.   CHALLENGED FINDINGS

The court commissioner made a number of findings of fact that Mr. Riste challenges with sufficient particularity for our review:

> 9. . . . Fred Wickholm [filed a creditor's claim] in the amount of $14,392.00, which claim was later withdrawn . . . .
> . . . .
> 11. No federal estate tax return was required to be filed. A state estate tax return was filed and following audit, a state estate tax in the amount of $2,027.00 was paid.
> . . . .
> 19. The testamentary trust ("Riste Trust") created in Decedent's Will is a valid trust under the laws of the State of Washington.
> . . . .
> 22. Decedent's Will did not contain a specific devise of the Viking Village Shopping Center to Darrell Riste.

23. Decedent's Will did not contain any provision prohibiting or restricting the right of the Personal Representative to sell the Viking Village Shopping Center.

24. The Personal Representative did not commingle its assets with the assets of Decedent's estate and did not improperly commingle assets of Decedent's estate with the assets of the Riste Trust.

25. The Personal Representative did not violate any of its fiduciary duties or responsibilities.

. . . .

27. The administration of Decedent's estate is complete and upon the determination and payment of the remaining fees and costs, the assets of the estate shall be transferred to Baker Boyer Bank as the trustee of the Riste Trust.

28. There is no basis for removing the Personal Representative or appointing a successor Personal Representative.

Clerk's Papers (CP) at 593-95.

### 1.     *Creditor's claim of $14,392 (challenged finding 9)*

Substantial evidence supports this finding by the court commissioner. The accounting documents of the estate in the record reflect no payment of any kind to Mr. Wickholm other than his full distributive share of the estate. Mr. Riste cites only to discussions of the claim, before Mr. Wickholm withdrew it.

### 2.     *Estate taxes (challenged finding 11)*

Substantial evidence supports the finding by the court commissioner that the estate paid only minimal estate taxes. The record reflects the estate's initial estimation and

payment of estate tax liability of $48,787. The record also reflects the Department of

Revenue's actual assessment and the estate's receipt of a refund in excess of $46,000.

> 3. *Terms of the will (challenged findings 9, 19, 22, and 23)*

Substantial evidence supports these findings by the court commissioner and its

conclusion that Mr. McAnally's will did not contain a specific devise of Viking Village.

Mr. McAnally made three specific bequests: cash, residential property, and personal

property. The residue of the estate funded the Riste Trust.

Paragraph 4.2.2 of the will is the only provision that supports Mr. Riste's

contention that the Viking Village property was directly bequeathed to him. That

paragraph provides:

> I give to my friend, DARRELL D. RISTE, all of my interest in the real
> property and improvements located in Yakima County, Washington, *and*
> occupied by me as my principal residence. That real property is described
> as:
>> [Legal description of residential property]

CP at 2 (emphasis added).

"And" is a function word, which generally requires us to construe the preceding

phrase and the succeeding phrase as conjunctive rather than disjunctive. *State v. Tiffany*,

44 Wash. 602, 603-04, 87 P. 932 (1906). Construing the phrase conjunctively leads to the

12

conclusion that the will did not bequeath Viking Village directly to Mr. Riste. Such a construction unfortunately renders the phrase preceding "and" meaningless.

Just prior to oral argument, our Supreme Court issued its decision in *In re Estate of Rathbone*, ___ Wn.2d ___, 412 P.3d 1283 (2018). The court held that when a PR has nonintervention powers, such as the case before us now, only the PR has authority to interpret the will. *Id.* at 1288. Primarily for this reason, we decline to construe paragraph 4.2.2 in a manner different than the PR. To do so would exceed our authority.[2]

### 4. Commingling (challenged finding 24)

The court commissioner rejected Mr. Riste's arguments that the PR improperly commingled estate assets. Mr. Riste argues that the commissioner ignored evidence.

Records show that the PR invested residual funds into a separate trust account. Those same documents show that Mr. Riste did not authorize the transfer of estate funds into the separate trust account. But Mr. Riste was not the personal representative of the estate, so his authorization was not required.

---

[2] In addition, the doctrine of laches likely prevents Mr. Riste from now asserting a position that he should have asserted before he authorized the PR to sell the Viking Village property. *In re Marriage of Hunter*, 52 Wn. App. 265, 270, 758 P.2d 1019 (1988) (Laches will prevent a plaintiff from enforcing a legal right if the plaintiff's delay in asserting the right would result in damage to the defendant.).

Tax documents show that the trust paid net income to Mr. Riste from these funds. We do not see that Mr. Riste has cause to complain of the PR's action, which provided him income.

5.      *No breach of fiduciary duties (challenged findings 25 and 28)*

Mr. Riste argues that the bank in its capacities as trustee and PR had conflicts of interest that required its removal and that it breached fiduciary duties by refusing to sue itself. Many of these arguments implicate the trust and are not properly before us. To the extent these arguments lack adequate citation to the record or legal authority, we deem them waived. We nevertheless discuss some of these arguments below.

B.      FINDINGS PERTAINING TO FIDUCIARY DUTIES AND DECISION NOT TO REMOVE THE PR

"The personal representative has the right to possess and control the estate's real and personal property until the estate is settled." *In re Estate of Lowe*, 191 Wn. App. 216, 228, 361 P.3d 789 (2015). A personal representative granted nonintervention powers can administer the estate without further court orders. RCW 11.68.090(1).

But under RCW 11.68.070 and RCW 11.28.250, a personal representative may be removed on a showing that he has failed to faithfully execute his trust, or if he has wasted, embezzled, or mismanaged property of the estate, committed fraud on the estate, is incompetent, has neglected the estate or neglected to perform necessary acts as personal

representative, or for any other action for which the court deems removal is necessary. *Estate of Jones*, 152 Wn.2d at 9. The court must have valid grounds for removing the personal representative, and the record must support those grounds. *In re Estate of Beard*, 60 Wn.2d 127, 132, 372 P.2d 530 (1962).

The trial court has broad discretion in determining whether and for what grounds to remove a personal representative. *In re Estates of Aaberg*, 25 Wn. App. 336, 339, 607 P.2d 1227 (1980). Here, the court commissioner decided not to remove the PR. The question on appeal is whether the trial court's decision not to remove the PR is so arbitrary as to amount to an abuse of discretion. *Id*. at 340. With this standard in mind, we review the court commissioner's decision.

The court commissioner's decision, as amplified by its letter attached to its findings and conclusions, explains why it denied Mr. Riste's request to remove the PR. The commissioner first aptly summarized the fiduciary duties of a personal representative:

> "The executor is an officer of the court and in a fiduciary relationship to those beneficially interested in the estate. He is obligated to exercise the utmost good faith and utilize the skill, judgment and diligence that an ordinarily cautious and prudent person would employ in the management of his own affairs. *Hesthagen v. Harby*, 78 Wn.2d 934, 942, 481 P.2d 438 (1971); *In re Estate of Peterson*, 12 Wn.2d 686, 733, 123 P.2d 733 (1942). He must perform his duties not only for the benefit of the legatees but must also protect the estate from invalid and doubtful claims, *In re Estate of*

> *Shea's Estate*, 69 Wn.2d 899, 421 P.2d 356 (1966), while protecting the rights of valid creditors. *Kerns v. Pickett*, 49 Wn.2d 770, 306 P.2d 1112 (1957). It is his duty to settle an estate as quickly as possible but without sacrifice to the estate, *National Bank of Commerce v. Peterson*, 179 Wash. 638, 644, 38 P.2d 361 (1934), and he is liable for any breach of his responsibility which causes loss to another. *Hesthagen v. Harby*, [78 Wn.2d at 942]. His trust must be fulfilled with conscientious fidelity whether his charge is large or small. [*Wilson's Estate v. Livingston*, 8 Wn. App. 519, 527-28, 507 P.2d 902 (1973).]"

CP at 608.

Most of the alleged wrongdoing pertains to the sale of the Viking Village property. In its letter attached to its findings and conclusions, the court commissioner explained why the sale of the commercial property did not grant it cause to remove the bank as personal representative of the estate.

### 1. *Mr. Riste agreed to the sale*

> Mr. Riste's opportunity to object to the sale, or to object to the conduct of the P.R. relating to the sale, was in July 2014. If Mr. Riste felt that he did not have enough information to form an objection, he could, at a minimum, have sought a continuance. Mr. Riste ultimately agreed to have it sold at $1,100,000.00.

CP at 609.

The court commissioner's decision is consistent with the record. The record is replete with communications between the PR and Mr. Riste about the

16

terms of the conditional sale and the eventual sale. This includes Mr. Riste's

approval of the eventual sale on March 20, 2015.

>    2.    *The PR had the right to sell the Viking Village property*

The court commissioner, in the body of its letter and in a footnote, explained why

it rejected Mr. Riste's argument that the PR lacked the right to sell the Viking Village

property.

>    Mr. Riste also challenges the P.R.'s right to sell the property by citing
>    RCW 11.04.250. Mr. Riste's interpretation is too narrow[3] and is rejected
>    by RCW 11.68.090 which gives a personal representative with non-
>    intervention power to sell real property without court approval.

CP at 609.

We begin by discussing the authority of a personal representative with

nonintervention powers.

>    RCW 11.68.090(1) provides:

>    Any personal representative acting under nonintervention powers may
>    borrow money on the general credit of the estate and may mortgage,
>    encumber, lease, sell, exchange, convey, and otherwise have the same
>    powers, and be subject to the same limitations of liability, that a trustee has
>    under chapters 11.98, 11.100, and 11.102 RCW with regard to the assets of

---

[3] "'While the legal title may vest in the heirs immediately upon the death of the ancestor, it vests subject to administration (section 4660, 1 Ballinger's Ann. Codes & St. [Pierce's Code, § 2718]) and is not absolute until after the process of administration, so that the title may be divested by the process of administration.' *Bickford v. Stewart*, 55 Wash. 278, 286, 104 P. 263, 266 (1909) . . . ." (Alterations in original.)

the estate, both real and personal, all without an order of court and without notice, approval, or confirmation, and in all other respects administer and settle the estate of the decedent without intervention of court.

The court commissioner's interpretation of RCW 11.68.090 is plainly correct. The record reflects that the PR sought court approval of the sale out of an abundance of caution because Mr. Riste was adamantly opposed to how it was administering the estate.

3. *The PR's decision to sell the Viking Village property, and the process it followed, were appropriate*

The court commissioner addressed Mr. Riste's additional arguments concerning the PR's decision and the process it followed to sell the Viking Village property.

The P.R. had non-intervention powers. The Shopping Center was not a specific devise. Instead, it passed through the general residual clause of the Will. Thus, the P.R. had the authority to sell the asset. . . . The P.R. gave notice of the hearing. The P.R. provided a rational basis for the sale in that it wanted to diversify the Trust estate. The P.R. obtained an appraisal to determine the value of the property. There were no objections.

CP at 609. The statements contained above are all consistent with the record.

4. *The PR did not provide Mr. Riste false or misleading information*

The court commissioner found, "There is no credible evidence in the record that the P.R. or its agents provided false or misleading information." CP at 610. Mr. Riste does not provide a sufficient citation to the record for us to discern what the PR did or said that misled him. We suspect that the purported misleading information consists of

18

the PR's interpretation of its own authority and the will, both of which we have confirmed

were appropriate.

> 5. *The PR's delay in providing requested information, while true, was*
> *not a sufficient reason to remove Baker Boyer Bank as PR*

The court commissioner found that the PR did delay in providing requested

information to Mr. Riste. The court noted a 15-month delay between Mr. Riste's request

for an inventory and appraisement and when the PR complied with the request. However,

the commissioner used its discretion by weighing the delay against several factors:

> When I weigh this failure against several factors, I find that it does not rise
> to the level of a breach of fiduciary duty. These factors are: the P.R. did
> finally provide Mr. Riste with a copy, Mr. Riste never sought Court action
> against the P.R pursuant to RCW 11.44.050, Mr. Riste did not object to the
> late delivery to the Court until months after the fact, Mr. Riste did not
> challenge the validity of the information contained in the Inventory and
> Appraisement and Mr. Riste did not show that the late delivery harmed him.

CP at 611.

The record again supports the court commissioner. Mr. Riste received the

information he requested from the PR in May 2014, but waited to complain until

September 2016—two days before the PR filed its declaration of completion of probate.

6.      *Decision not to remove the PR*

A trial court's decision not to remove a personal representative is subject to very narrow appellate review. We ask whether the decision is so arbitrary as to amount to an abuse of discretion. *See Estates of Aaberg*, 25 Wn. App. at 339-40.

After reviewing the reasons the court commissioner gave for denying Mr. Riste's petition and having noted that the reasons are well supported by the record and the law, we cannot say that the court commissioner's decision was arbitrary. Far from arbitrary, the court commissioner's decision reflects a substantial amount of preparation and consideration.

C.      THE PR'S FIDUCIARY FEES AND ATTORNEY FEES

Mr. Riste argues that the court commissioner erroneously approved the PR's fiduciary fees and attorney fees. His arguments depend on his prevailing on the issues. Because he has not, we affirm the award of fiduciary fees and attorney fees.

D.      ATTORNEY FEES ON APPEAL

Under a separate attorney fee heading in respondent's brief, the PR states: "The Respondent requests that it be awarded fees under RCW 11.48.210. *Chesnin v. Fischler*, 43 Wn. App. 360, 717 P.2d 298 (1986)." Resp't's Br. at 28.

"[RAP 18.1(b)] requires more than a bald request for attorney fees on appeal."

*Stiles v. Kearney*, 168 Wn. App. 250, 267, 277 P.3d 9 (2012). "Argument and citation to

authority are required under the rule to advise the court of the appropriate grounds for an

award of attorney fees as costs." *Id.*

Here, the PR cites an appropriate statute and case authority for its position that it is

entitled to attorney fees. What is missing is one or perhaps two sentences—a brief

argument that ties the authorities to its request for fees.

One can debate whether the PR has complied with RAP 18.1(b). But throughout

this opinion, we have reviewed various factual and legal arguments made by Mr. Riste

that did not comply with our rules of appellate procedure. We similarly relax the strict

requirement that a request for fees contain argument in the brief. This is because

we can easily discern, without argument, why the PR is entitled to attorney fees under

RCW 11.48.210.

RCW 11.48.210 provides in relevant part: "An attorney performing services for the

estate at the instance of the personal representative shall have such compensation therefor

out of the estate as the court shall deem just and reasonable." Subject to the PR's

compliance with RAP 18.1(d), we award it just and reasonable attorney fees.

No. 35054-1-III
*Estate of McAnally*

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

Lawrence-Berrey, C.J.

WE CONCUR:

Fearing, J.                    Siddoway, J.

22