[No. 30807. Department One. April 28, 1949.]

BRUCE A. COOMBS et al., Appellants, v. R. D. BODLE COMPANY et al., Respondents.[1]

[1]Reported in 205 P. (2d) 888.

*LaBerge & Lyon,* for appellants.

*Emory, Howe, Davis & Riese,* for respondent Seattle-First National Bank.

MALLERY, J.—Bruce A. Coombs and James F. McVey are copartners doing business as West Air Company. They engage in the business of dusting and spraying crops by airplane. They were the plaintiffs below and will be referred to hereafter as McVey.

R. D. Bodle Company is a corporation engaged in growing peas. It had considerable acreage scattered around the state in charge of its field men. It was the original defendant in this action and will be referred to hereafter as Bodle.

W. C. Beaver and B. C. Bohm were copartners doing business as Beaver & Bohm Mfg. Co., and were engaged in the manufacture of insecticides and the application of them to growing crops. Throughout the record they are referred to as Be-Bo. We shall do the same.

On August 11, 1946, Be-Bo and Bodle entered into a contract by which Be-Bo was to sell the insecticidal dust and apply it to Bodle's 1947 crop. One clause of that contract provided:

"Application of the dust on said fields will be done by the company under the direction of authorized employees of the Buyer. Buyer reserves the right to select and specify the airplane application companies."

Prior to the dusting season, McVey and Be-Bo had had some negotiations regarding McVey's airplane dusting services, but they had not matured into a contract. McVey knew of the contract between Be-Bo and Bodle, although he

had not read it. McVey had done some dusting directly for Bodle in previous years.

This action was brought by McVey to secure a judgment against Bodle for the airplane flying service rendered in dusting Bodle's 1947 crop. No dispute appears over the amount of service rendered or the value thereof.

When one of Bodle's crops required dusting, Bodle field men would either call Be-Bo, who would contact McVey, who would go to the field and apply the dust under the direction of the Bodle field man, or the field man would contact McVey directly. McVey, after every dusting operation, prepared an invoice and a flight report on forms furnished by Be-Bo and a statement of the amount due for the service and send them to Be-Bo, as he was instructed to do by the field men. Exhibit "C" in the record shows that McVey did this in the case of fields other than Bodle's and received his check in payment therefore from Be-Bo.

The Seattle-First National Bank was financing Be-Bo. Commencing on or about July 1, 1947, and ending on or about August 16, 1947, Be-Bo, by a series of written instruments, assigned for a valuable consideration all of its rights to the moneys due from Bodle under the contract, to the bank. Notice of the assignment of these accounts receivable was duly given and filed on June 16, 1947, with the secretary of state in accordance with the provisions of Rem. Supp. 1947, § 2721-1 *et seq.*

McVey had never made demand for payment for services upon Bodle until on or about September 10, 1947, after he had attended a creditors' meeting of Be-Bo and was aware that Be-Bo was insolvent. Thereafter, McVey brought this action against Bodle, whereupon Bodle deposited the money in court by interpleader, and the Seattle-First National Bank intervened herein. Thereafter, the real issue was between McVey and the Seattle-First National Bank, which was asserting its right to the money by virtue of its assignment. McVey had never asserted or perfected any crop lien as provided for under the provisions of Rem. Rev. Stat. (Sup.), § 1188-1 and § 1188-4 [P.P.C. §§ 175-1, -7].

The court dismissed the plaintiffs' complaint against Bodle with prejudice and gave judgment for the Seattle-First National Bank. From the judgment, plaintiffs appeal.

We set out the court's findings of fact numbers 5 and 6:

## V.

"That on the 8th day of November, 1946 the defendant R. D. Bodle Co., a corporation, did make and enter into a written contract with the said Beaver & Bohm Manufacturing Co. by the terms of which said R. D. Bodle Co. agreed to buy from said Beaver & Bohm Manufacturing Co. and said Beaver & Bohm Manufacturing Co. agreed to furnish and apply by airplane insecticides upon fields owned, leased or controlled by defendant R. D. Bodle Co., anywhere in the State of Washington, west of the summit of the Cascade Mountains, at the agreed price of 16½¢ per pound for the insecticides and .08¢ per pound for the application by airplane. That a true copy of said contract is annexed to the Answer and Cross-Complaint herein of the additional defendant Seattle-First National Bank.

"That during the period from June 23, 1947 to July 27, 1947, the plaintiffs, at the special instance and request of employees of R. D. Bodle Co. who at the time *were acting as agents for Beaver & Bohm Manufacturing Co. under the contract heretofore mentioned,* dusted by air pea fields owned, leased or controlled by the defendant R. D. Bodle Co. at various locations west of the summit of the Cascade Mountains, including fields in the vicinity of Stanwood, Edison and Kent, Washington. That all of the insecticides used in said operation were manufactured and supplied by said Beaver & Bohm Manufacturing Co. which said contract is referred to in Paragraph V hereof, and *plaintiffs particularly knew that the said contract not only provided that said Beaver & Bohm Manufacturing Co. would furnish the insecticide but would also attend to the air application of said insecticide* which would be done by aviation companies under contract to the said Beaver & Bohm Manufacturing Co. That the reasonable and agreed value of the services so rendered by plaintiffs to Beaver & Bohm Manufacturing Co. in dusting said fields was the sum of $2,412.00, no part of which has been paid to plaintiffs."

## VI.

"*That in recognition of their contractual relations,* as aforesaid, with Beaver & Bohm Manufacturing Co., the plain-

tiffs repeatedly, during and after the rendition of their flying services, *did send invoices and other evidence of their performance of the flights and the amount due and owing on the flights to the said Beaver & Bohm Manufacturing Co. and did not make demand for the payment of such services upon the defendant, R. D. Bodle Co.* until on or about September 10, 1947, after the plaintiff had attended a creditors' meeting of the said Beaver & Bohm Manufacturing Co." (Italics ours.)

The appellants contend the court erred in holding that *Bodle was not liable* for the cost of dusting performed on its crops. Under this assignment, appellants contend that the agents of Bodle had hired McVey; that they had both actual and apparent authority to do so; that they showed McVey the fields to be sprayed and told him how to do it; and that, therefore, Bodle is liable to them.

■ The record supports the court's findings that McVey knew of the contract between Be-Bo and Bodle, and that McVey sent the bill to Be-Bo and did not send any bill to Bodle until after attending a meeting of the creditors of Be-Bo. We sustain the trial court's finding that McVey knew the services were rendered for Be-Bo and that Bodle was not liable to appellants.

Appellants next assert the court erred in holding that Bodle men were acting as agents of Be-Bo, when there was no showing that either Be-Bo or Bodle field men consented to such agency or that there was ever any meeting of their minds concerning such agency. Under this assignment of error, the appellants take the position that the field men of Bodle could not have acted as the agents of Be-Bo because there was no meeting of the minds between them nor any agreement reached by which they had contracted to render such a service for Be-Bo, and that there was no specific consent of Be-Bo to have the particular field agents of Bodle act as their agents. Appellants' position amounts to this: that Bodle is liable because Be-Bo is not, and the reason why Be-Bo is not is because the field men were not its agents.

■ The contract empowered Bodle, a corporation, to select the flyers and supervise the application of insecticides

on its fields and make Be-Bo liable for the services thus rendered. Thus, there was a meeting of minds between Be-Bo and Bodle. Every corporation must act through its agents, and in this instance they were the field men. In other words, Bodle was the agent of Be-Bo, and the field men were subagents of Bodle. Their connection with Be-Bo is thus direct and clear. It was not necessary to the exercise of their agency that there be a meeting of minds between them and Be-Bo, since there was a meeting of minds between Be-Bo and Bodle, in whose shoes they stood as subagents; nor was it necessary that there should exist a relationship of employer and employee between them.

A definition adopted by the American Law Institute is:

"Agency is the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." Restatement of Agency § I (1).

■ The person who acts for a principal may do so gratuitously. 2 Am. Jur. 13, § 2.

We quote appellants' contention on this matter:

"Let us suppose that Be-Bo wanted to hire appellants and that when they went to McVey's hotel they found him out. Thereupon they left word with the bell-hop at the hotel to notify McVey they had dusting to be done. Can it possibly be conceived that the bell-hop would be Be-Bo's agent for the purpose of hiring McVey?"

In this supposed case, we conceive that, had McVey dusted in accordance with the instructions given him by the bell-hop, that Be-Bo would be liable under the principle of agency. *Qui facit per alium facit per se.* Since an agency may be performed gratuitously, we know of no reason why the relationship of employer and employee is indispensable to an act of agency.

Appellants next contend the court erred in holding that Bodle was not liable for dusting where their field men did not advise appellants that they were acting as agents of Be-Bo and did not advise appellants that there was any agency in existence. This assignment of error assumes facts

contrary to those found by the court as being supported by the evidence in the case. McVey, upon instructions from the field men, recognized Be-Bo as the principal and rendered his bills to them, and did not render any bills to Bodle until after he learned that Be-Bo was insolvent.

Appellants next contend that the court erred in holding that, by sending invoices to Be-Bo, a novation took place, and that by such act appellants discharged Bodle of any further liability for the dusting performed on their crops. There is no merit to this contention. The theory of novation appears nowhere in the case.

Appellants next contend the court erred in holding that, where the bank was making demand against appellants for the $2,412 held in court, appellants could not set up their claim against Be-Bo, the insolvent assignor of the bank, as an equitable set-off to the bank's claim.

The Seattle-First National Bank has no claim against the appellants, and neither has Be-Bo nor Bodle. There is no ground for invoking the right to a set-off.

Finally, the appellants contend the court erred in holding that appellants' equitable claims as to Be-Bo's accounts receivable from Bodle did not take precedence over the legal claim held by the bank.

Rem. Supp. 1947, § 2721-2, provides as follows:

"Subject to the provisions of Section 3 of this act, a written assignment, signed by the assignor, of an account for value, shall be valid as against, and shall have priority as to such account, over present and future creditors (*excepting creditors having existing specific liens on the account when assigned*) of the assignor and subsequent assignees of such account. . . ." (Italics ours.)

The appellants contend that they can take advantage of the italicized portion above quoted and are entitled to preference over the bank in its role as assignee of the Bodle account. As heretofore stated, the appellants took no step to perfect a crop lien in this case, and therefore have no specific lien which entitled them to a preference. Without a specific lien, they are general creditors.

Appellants do not directly challenge¹the court's findings of fact in their assignments of error. Instead, they cite cases which they contend are in point by reason of certain evidence they conceive to be in support thereof.

Thus it may be conceded, as an abstract principle of law, that the apparent authority of the Bodle field men was sufficient to bind Bodle *if they had purported to have done so,* which they did not. It may further be conceded that, if the field men had not disclosed Be-Bo as their principal, that Bodle would have been liable to appellants.

The knowledge of McVey that Be-Bo was the principal and his assent to render service for Be-Bo, evidenced by his looking to Be-Bo for his pay, are the pivotal facts in this case. The findings of the trial court are against the appellants on this point, and we find they are supported by the record.

The judgment is affirmed.

JEFFERS, C. J., BEALS, STEINERT, and HILL, JJ., concur.

