**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| ROBERT J. FRANTOM, individually, | NO. 52007-9-II |
| Appellant, | |
| v. | |
| STATE OF WASHINGTON; KITSAP COUNTY, WASHINGTON; KITSAP COUNTY SHERIFF'S OFFICE; WASHINGTON STATE PATROL; and WASHINGTON STATE PATROL TROOPER JOREN BARRACLOUGH and WASHINGTON STATE PATROL TROOPER ROBERT ZOELLIN, in their official and individual capacity, | PUBLISHED OPINION |
| Defendants, | |
| and | |
| KITSAP COUNTY DEPUTY SHERIFF SHANE HANSON, in his official and individual capacity; and LORENA LLAMAS, an individual, | |
| Respondents. | |

GLASGOW, J.—Lorena Llamas struck a car that the plaintiff, Robert Frantom, was driving. Frantom was injured, and his passenger was killed.

Frantom sued multiple defendants for damages, including Llamas, Kitsap County Deputy Sheriff Shane Hanson, and two Washington State Patrol (WSP) troopers who were involved in the incident. Several defendants were dismissed before trial, leaving Llamas and Hanson as the only remaining defendants at trial. The jury found Llamas liable for Frantom's injuries and found Hanson not liable.

Frantom appeals, arguing that the trial court erred when it made certain evidentiary rulings that he contends violated ER 611(c). Frantom argues that the trial court improperly refused to let him treat Hanson as an adverse party for purposes of asking leading questions when Frantom called Hanson during his case in chief. Frantom also argues that the trial court erred by permitting Hanson's counsel to ask leading questions of Hanson when she cross-examined him during Frantom's case in chief. Frantom makes similar arguments regarding the two WSP troopers who were no longer parties, but were witnesses at trial.

We hold that the trial court erred when it did not permit Frantom's counsel to ask Hanson leading questions during direct examination, but that this error was harmless. Frantom did not properly preserve the issue of the defense's use of leading questions during cross-examination of Hanson. Frantom also did not preserve error with regard to the issues involving examination of the troopers.

We affirm the jury's verdict and the judgment in favor of Hanson.

FACTS

Law enforcement officers contacted Llamas in the parking lot of a Silverdale, Washington bar. Llamas fled, and three law enforcement officers—Hanson (a Kitsap County deputy sheriff), Joren Barraclough (a WSP trooper), and Robert Zoellin (a WSP trooper)—followed in their patrol cars. At an intersection, Llamas crashed into a car that Frantom was driving, killing Frantom's girlfriend, who was a passenger, and injuring Frantom.

Frantom sued Llamas. He also sued Hanson, Barraclough, and Zoellin in their individual and official capacities, as well as their employer agencies. Frantom argued that the officers engaged in a high-speed pursuit in violation of their respective agency's policies. He sought

monetary damages from each of the officers and their respective employers. Barraclough and Zoellin settled the claims against them before trial.[1]

At trial, Frantom called Hanson, Barraclough, and Zoellin, as witnesses during his case in chief. Early in Frantom's direct examination of Hanson, the defense objected to a leading question that Frantom's counsel posed. The trial court sustained the objection, explaining that a party can never use leading questions in direct examination. Frantom's counsel responded by calling the trial court's attention to the portion of ER 611(c) referring to adverse parties and arguing that he was permitted to ask leading questions because Hanson was an adverse party. The trial court disagreed, noting that Frantom's counsel had failed to bring a motion to treat Hanson as an adverse witness. The trial court added that leading questions were categorically disallowed on direct examination except when used to develop a witness's testimony.

The trial court then suggested that leading questions may sometimes be allowed on direct examination if a motion is made to treat a witness as hostile. Frantom made a motion to treat Hanson as a hostile witness. The trial court denied Frantom's motion, ruling that the record did not support Frantom treating Hanson as a hostile witness.

Frantom did not make an offer of proof to articulate that there was testimony he would have elicited with leading questions. Nor does the record otherwise reflect what testimony, if any, Frantom was unable to put before the jury due to the trial court's ruling.

Within nine questions of the sustained objection, Frantom resumed asking leading questions. The defense objected only once more to Frantom's continued use of leading questions during redirect. The trial court overruled this objection and permitted the question. Frantom also

---

[1] While the record does not directly address dismissal of the other defendants, including the Washington State Patrol and Kitsap County, the only defendants who had judgments entered against them were Llamas and Hanson.

impeached Hanson during direct examination using Hanson's report and on redirect examination using his direct examination testimony.

During the defense's cross-examination of Hanson during Frantom's case in chief, Frantom objected twice based on leading questions without otherwise explaining why he believed the questions were objectionable. The first question Frantom objected to was about the distinction between two definitions of "pursuit" in the Kitsap County Sheriff's Office policy manual: "Is there any relationship between 314.1.1 and 314.1.2, relationship between those two definitions?" Verbatim Report of Proceedings (VRP) (Jan. 25, 2018) at 128. The trial court overruled this objection noting that leading questions were permitted because it was cross-examination, even though this was not a leading question.

Frantom's second objection to the defendant's use of leading questions occurred at the beginning of a discussion pertaining to Hanson's visual contact with Llamas's car during the pursuit. The defendant began a question, but Frantom objected before counsel actually asked anything. The trial court overruled Frantom's objection, explaining again that leading questions were permitted on cross-examination. Frantom did not object again during this line of questioning, even though the defendant completed, and Frantom answered, at least one additional leading question. Frantom did not make a standing objection to the defendant's use of leading questions during the cross-examination of Hanson.

Frantom also used leading questions throughout his direct examinations of troopers Barraclough and Zoellin during his case in chief. The defense objected to these leading questions four times. The trial court sustained all four objections. Frantom did not provide an offer of proof to show how the two troopers might be identified with an adverse party, nor did he otherwise establish what additional testimony he might have elicited through leading questions.

4

While examining Barraclough and Zoellin, Frantom continued asking leading questions even after the trial court sustained the defendant's objection. In Frantom's examination of Zoellin, the defendant did not object until redirect, at which point Frantom had already asked many leading questions.

Frantom also objected to the defendant's use of leading questions in the cross-examination of Barraclough during Frantom's case in chief. The trial court overruled this objection, noting that leading questions during cross-examination were permitted.

The jury ultimately found Llamas liable to Frantom and awarded him $400,000 in damages. The jury found Hanson not liable to Frantom.

Frantom appeals the jury's verdict in his claim against Hanson.

ANALYSIS

A.      Standard of Review

We review the trial court's interpretation of evidentiary rules de novo. *State v. DeVincentis*, 150 Wn.2d 11, 17, 74 P.3d 119 (2003). If the trial court's interpretation of ER 611(c) was correct, the trial court's application of the rule "to admit or exclude evidence is reviewed for an abuse of discretion." *Id.* Abuse of discretion has occurred when a ruling was "'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'" *State v. Williams*, 137 Wn. App. 736, 743, 154 P.3d 322 (2007) (quoting *State v. Downing*, 151 Wn.2d 265, 272, 87 P.3d 1169 (2004)).

Errors pertaining to the form of a question are reversible only if they are prejudicial and not harmless. *See State v. Swanson,* 73 Wn.2d 698, 699, 440 P.2d 492 (1968); *see also State v. Torres,* 16 Wn. App. 254, 258, 554 P.2d 1069 (1976). The test for harmless error is whether there is a reasonable probability that the error materially affected the outcome of the trial. *State v. Gresham*, 173 Wn.2d 405, 425, 269 P.3d 207 (2012).

B.     Examinations of Hanson

   1.     Leading questions during Frantom's direct examination of Hanson

      i.     Interpretation and application of ER 611(c)

Frantom argues that the trial court erred when it did not permit him, the plaintiff, to treat the defendant, Hanson, as an adverse witness when Frantom examined Hanson during his case in chief. We agree that leading questions should have been allowed.

ER 611(c) provides that if "a party calls a hostile witness, *an adverse party*, or a witness identified with an adverse party, *interrogation may be by leading questions*." (Emphasis added.) ER 611(c) does not require that a party seeking to ask leading questions of an adverse party move to declare the witness hostile nor does it require a pretrial or preexamination motion to permit leading questions of an adverse party during direct examination.

In *McLean v. St. Regis Paper Co.*, 6 Wn. App. 727, 734, 496 P.2d 571 (1972), we held that a witness who is an adverse party is "presumed to be hostile in nature and may be called as an adverse witness *as a matter of right*." [2] (Emphasis added.) Moreover, a party seeking to treat a party opponent as an adverse witness may do so "without showing that the witness is actually hostile." *Trotzer v. Vig,* 149 Wn. App. 594, 604 n.5, 203 P.3d 1056 (2009).

Hanson notes that the last sentence of ER 611(c) provides that interrogation during the direct examination of an adverse party "'*may* be by leading questions.'" Br. of Resp't at 11 (emphasis added). According to Hanson, this means the trial court has discretion to deny leading questions during the direct examination of an adverse party. This court has held, however, that a

---

[2] Although *McLean* was decided under former CR 43(b) (1972), that rule was the predecessor to ER 611(c), and we import the reasoning from CR 43(b) cases to ER 611(c) cases. *See Trotzer v. Vig*, 149 Wn. App. 594, 604 n.5, 203 P.3d 1056 (2009) and *Henderson v. Pennwalt Corp.*, 41 Wn. App. 547, 551, 704 P.2d 1256 (1985).

party has the unqualified right to ask leading questions of an adverse party on direct examination. For example, in *Hodgins v. Oles*, we held that "'[a] party may call an adverse party . . . and interrogate him by leading questions and contradict and impeach him . . . as if he had been called by the adverse party'" and recognized "the necessity of according a party his right to cross-examine adverse witnesses." 8 Wn. App. 279, 280, 283, 505 P.2d 825 (1973) (quoting former CR 43(b)).[3]

To the extent the trial court ruled that Frantom needed to show Hanson's actual hostility to treat him as a hostile witness under ER 611(c), the trial court incorrectly interpreted ER 611(c) as a matter of law. There is no question that Hanson was an adverse party to Frantom in this case. He was a defendant at trial, and Frantom was the plaintiff. Under ER 611(c) and case law, Frantom had a right to ask Hanson leading questions as an adverse witness without establishing that Hanson was actually hostile.

Frantom is also correct that he did not need to bring a separate motion to ask leading questions of Hanson during direct examination. Neither ER 611(c) nor the case law requires a party to move to ask leading questions during direct examination of an adverse party. *See Trotzer*, 149 Wn. App. at 603-04; *see also Hodgins*, 8 Wn. App. at 281-84.

The trial court erred when it ruled that Frantom could not ask Hanson leading questions on direct examination under ER 611(c).

ii.     Harmless error

An erroneous ER 611(c) ruling does not merit reversal unless the appellant shows with specificity that they were harmed by the trial court's ruling. *Trotzer,* 149 Wn. App. at 604. Frantom argues that the trial court's error harmed him by preventing him from asking leading questions "when he could legally do so." Appellant's Reply Br. at 17. He asserts that the trial court's refusal

---

[3] As with *McLean*, this case was decided under former CR 43(b), but the same reasoning applies.

to let him ask leading questions of Hanson during his direct examination "shut down" his case and "shattered" his trial preparation. *Id.* at 13, 17. Frantom also asserts the trial court's ruling "corrupts" the totality of the case through a "systematic misapplication of the rules," and that he was denied the "crucible of cross-examination" and the right to a "fair trial." *Id.* at 16-17. We disagree and decline to overturn the jury's verdict because the trial court's error was harmless.

In *Trotzer*, we declined to reverse where the appellant "articulated no specific harm" arising from a ruling that restricted leading questions on direct examination. 149 Wn. App. at 604. The court emphasized that Trotzer was able to "fully exercise[] the opportunity to ask . . . leading questions" of the witness later in the trial because the defense also called that witness, and Trotzer cross-examined him then. *Id.* Trotzer never showed that he was unable to ask the witness any of the questions on cross-examination that he had planned to ask on direct examination. *Id.*

Frantom fails to establish that he was actually harmed by the trial court's ruling. Like the appellant in *Trotzer*, Frantom was able to fully cross-examine Hanson later in the trial when Hanson was called as a defense witness. Although Frantom's cross-examination of Hanson was limited to the scope of the defense's direct examination, Frantom has not identified that there was any testimony he was unable to elicit during his cross-examination that he would otherwise have obtained through leading questions on direct.

In addition, Frantom examined Hanson extensively notwithstanding the trial court's ruling. Throughout his direct examination, Frantom asked numerous leading questions to which the defense did not object. He used leading questions to address material issues, such as whether Hanson engaged in a reckless high-speed chase. Hanson consistently answered Frantom's questions. Frantom was even able to impeach Hanson. Frantom also made no offer of proof during

trial to show what leading questions he planned to ask Hanson and what testimony he sought but was unable to elicit.

On this record, there is no reasonable probability that the outcome would have differed had the trial court overruled rather than sustained the defendant's objection to Frantom's leading questions during direct examination of Hanson. We conclude that any error was harmless.

2.    Leading questions during the defendant's "friendly cross-examination" of Hanson

Frantom argues that the trial court erred by permitting defendant to ask leading questions of Hanson while cross-examining him during Frantom's case in chief. We address the meaning of ER 611(c)'s statement about leading questions on cross-examination, but we ultimately conclude that Frantom did not properly preserve this issue in this case.

ER 611(c) states, "*Ordinarily* leading questions should be permitted on cross-examination." (Emphasis added.) We interpret the meaning of court rules using the same principles that we use when interpreting the meaning of statutes. *Jafar v. Webb,* 177 Wn.2d 520, 526, 303 P.3d 1042 (2013). If the rule's meaning is plain, we must give effect to the plain language of the rule. *Id.* We consider the context of the entire rule. *State v. Robinson,* 153 Wn.2d 689, 693, 107 P.3d 90 (2005).

The word "ordinarily" plainly indicates that trial courts are not *always* required to permit leading questions on cross-examination. The trial court has some discretion.

The Washington Supreme Court held in a pre-ER 611(c) case that leading questions may *never* be used by a friendly party in cross-examining its own witness after direct examination by an adverse party. *Zukowsky v. Brown*, 79 Wn.2d 586, 604, 488 P.2d 269 (1971). But because *Zukowsky* predates the adoption of ER 611(c), and the plain language of ER 611(c) uses the term "[o]rdinarily," we do not rely on *Zukowsky*.

Read in context, ER 611(c) plainly contemplates that leading questions will typically be used with hostile or adverse witnesses. We conclude that "[o]rdinarily" in the phrase "[o]rdinarily leading questions should be permitted on cross-examination," ER 611(c), indicates that counsel cannot use leading questions to examine a party that counsel represents unless the trial court finds there is a specific reason to permit leading questions.

Here, Frantom's counsel objected twice, arguing that Hanson's counsel was asking leading questions on cross-examination. Frantom did not properly preserve the issue, however, because his objections were not made to leading questions, and because he failed to object when counsel actually asked a leading question.

The first question Frantom objected to on the ground that it was leading, was not a leading question. VRP (Jan. 25, 2018) at 128 ("Is there any relationship between 314.1.1 and 314.1.2, relationship between those two definitions?"). Although the trial court overruled Frantom's objection on the wrong basis—that leading questions are categorically permitted on cross-examination—the question was not leading and not objectionable. "We are entitled to affirm on any grounds supported by the record," *Lawson v. Boeing* Co., 58 Wn. App. 261, 266, 792 P.2d 545 (1990), and we hold the trial court did not err by overruling this objection.

The second time Frantom objected, both the objection and the trial court's ruling came before the defendant's counsel even posed a question. Soon after, when the defendant did pose a leading question—"You, instead, were five seconds in time behind her but not on the road with visual contact?"—Frantom did not object. VRP (Jan. 25, 2018) at 167. Nor did he ever make a standing objection to the use of leading questions during the defendant's friendly cross-examination of Hanson.

In the absence of a proper objection to a leading question or a standing objection, Frantom failed to properly preserve this issue.[4] Therefore, the use of leading questions when examining Hanson cannot be a basis for reversing the jury's verdict.

C.      Examinations of Barraclough and Zoellin

Frantom argues that the trial court erred when it did not permit him to use leading questions during his direct examinations of Barraclough and Zoellin. Frantom also argues that the trial court erred when it allowed the defendant to ask questions during its friendly cross-examination of Barraclough and Zoellin that he contends exceeded the scope of Frantom's direct examination.

For the reasons explained below, we hold that Frantom did not properly preserve either of these issues for appeal. Accordingly, we do not reach the merits of either issue.

1.      Direct examinations of Barraclough and Zoellin

In general, a party cannot raise on appeal an issue it did not raise at the trial court level, unless the issue concerns a manifest constitutional error. RAP 2.5(a); *Aventis Pharm., Inc. v. State*, 5 Wn. App. 2d 637, 650, 428 P.3d 389 (2018).

Here, the defendant objected on three occasions to Frantom's use of leading questions during his direct examination of the troopers. The trial court sustained each objection, and, in response, Frantom's counsel simply rephrased the question and obtained an answer. Frantom never argued to the trial court that he was entitled to ask leading questions of the troopers because he believed they were "identified with an adverse party" under ER 611(c). He also never provided an

---

[4] Even if Frantom had properly preserved this issue, we would conclude that any error was harmless because an appellant claiming abuse of discretion under ER 611(c) must show prejudice with specificity. *See Trotzer*, 149 Wn. App. at 604. Frantom has not argued that defendant's counsel's use of leading questions during her friendly cross-examination of Hanson elicited testimony that would not otherwise have been admitted, nor has he shown that the use of leading questions misled the jury or otherwise "prejudiced his case such that he deserves a new trial." *Id.*

offer of proof establishing how they were identified with the defendant. The trial court had no opportunity to evaluate whether these witnesses were indeed identified with Hanson under ER 611(c), nor is there sufficient evidence in this record for us to review the alleged error.

Because Frantom did not properly preserve this issue for appeal, we decline to address it on the merits.

2.      Cross-examination of Barraclough and Zoellin

Frantom concedes on appeal that the trial court had discretion whether or not to permit leading questions in the defendant's cross-examination of the troopers. He argues instead that defendant's counsel's cross-examination of the troopers improperly exceeded the scope of Frantom's direct examination.

On appeal, "[a] party may only assign error . . . on the specific ground of the evidentiary objection made at trial." *State v. Guloy*, 104 Wn.2d 412, 422, 705 P.2d 1182 (1985); RAP 2.5(a). Frantom objected only once during the defendant's cross-examinations of the troopers. The basis of Frantom's sole objection was that one defense question was leading. The trial court overruled Frantom's objection, holding that the question occurred during cross-examination. Frantom never argued that the subject of the question was beyond the scope of direct.

Frantom did not properly preserve the issue he raises on appeal because he did not object on those grounds. The trial court never had an opportunity to rule on the issue of whether cross-examination exceeded the scope of direct. Thus, we decline to reach the merits of this issue.

CONCLUSION

Although the trial court incorrectly interpreted ER 611(c) when it did not allow Frantom to ask Hanson leading questions during direct examination, this error was harmless. Frantom did

not properly preserve for appeal the other issues he raises. We affirm the jury's verdict and the judgment in favor of Hanson.

Glasgow, J.

We concur:

Maxa, P.J.

Melnick, J.